## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AKEEM DIXON, *et al.*** | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 13-3730** |
| **v.** | : | |
| | : | |
| **WOMEN'S CHRISTIAN ALLIANCE** | : | |
| **FOSTER CARE AGENCY** | : | |
| *Defendant* | : | |

FILED

SEP 2 6 2014

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk
September 26, 2014

NITZA I. QUIÑONES ALEJANDRO, J.

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a motion to dismiss filed by Women's Christian Alliance Foster Care Agency ("WCA" or "Defendant") pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6), which seeks dismissal of the claims for violations of 42 U.S.C. §1981 ("§1981") and §1983 ("§1983") in the amended complaint. [ECF 9]. Akeem Dixon ("Dixon") and Randolph Sanders ("Sanders") (collectively "Plaintiffs") oppose the motion to dismiss. [ECF 10]. This matter is ripe for disposition.

For the reasons stated herein, the motion to dismiss is granted.

## BACKGROUND

On June 27, 2013, Plaintiffs filed a complaint against Defendant, their former employer. [ECF 1]. Following Defendant's filing of a motion to dismiss the complaint, [ECF 6], Plaintiffs filed an amended complaint asserting claims of violations of their civil rights under §1981 and §1983; *to wit*: that Defendant wrongfully terminated Plaintiffs' employment because of (1) their race and (2) their support for the adoption of an African-American child by a Caucasian family. [ECF 8]. On November 4, 2013, Defendant filed the instant motion to dismiss. [ECF 9].

When ruling on the motion to dismiss, this Court must accept, as true, the relevant and

pertinent factual allegations in Plaintiffs' amended complaint, which are summarized as follows:

Plaintiffs are African-American males. (Amend. Comp. ¶3). Dixon was employed on November 7, 2011, by Defendant as a recruiter and community liaison. (*Id.* at ¶3). Sanders was employed on May 1, 2012, as an intake supervisor and was Dixon's immediate supervisor. (*Id.* at ¶¶3, 8). Plaintiffs were both terminated on February 28, 2013, ostensibly for violating company policies, procedures and practices; charges that Plaintiffs deny. (*Id.* at ¶¶3, 30, 34-35).

Defendant is a non-sectarian, non-profit child welfare and community services organization that provides, *inter alia,* foster family care, and recruitment and comprehensive adoption services. (*Id.* at ¶¶4-5, 7).

Prior to June 2012, Kristi Andrews ("Andrews"), an African-American female, was approved as a foster parent through Defendant. (*Id.* at ¶9). On June 27, 2012, "Child X," an African-American child, was placed in foster care in Andrews' home on a temporary basis. (*Id.* at ¶10).

On June 30, 2012, the placement goal for Child X changed from that of foster care to adoption. (*Id.* at ¶11). Thereafter, Shaketta Crawford ("Crawford"), a Department of Human Services ("DHS") social worker, asked a case worker employed by Defendant whether Child X could be placed elsewhere pending the adoption. (*Id.* at ¶11).

On September 10, 2012, the home of Andrew and Angela Pack (the Packs), who are both Caucasians, was identified as a pre-adoptive home. (*Id.* at ¶12).[1] A month later, the Packs met with Plaintiffs and Laura Bardol, a co-worker and Intake Supervisor, to discuss the adoption of Child X. (*Id.* at ¶14).

On December 19, 2012, Diana Schimmel, a Philadelphia Defenders' Association Child Advocate Attorney, recommended that all concerned parties move forward with the Packs as the adoptive parents of Child X. (*Id.* at 17). On January 3, 2013, the Packs' home was approved for the adoption of Child X. (*Id.* at ¶19). On January 10, 2013, DHS employees met the Packs at their home in furtherance of the adoption process for Child X, (*id.* at ¶20), who was scheduled to move into the Packs' home on February 1, 2013, pending a final home approval. (*Id.* at ¶21).

On January 17, 2013, Daniel Sauter ("Sauter"), a social worker with the Philadelphia Defenders' Association, met the Packs at their home and suggested

---

[1] In the amended complaint, Plaintiffs provide, in great detail, a description of the process by which the Packs were evaluated as a potential adoptive family for Child X by Plaintiffs and numerous employees of Defendant, DHS, and the Philadelphia Defenders' Association. (*Id.* at ¶¶12 through 25).

that Child X have an overnight visit at the Packs' home the weekend of January 19th, and a visit over the entire weekend of January 25, 2013. (*Id.* at ¶22). The suggestion was approved by Crawford, Dennis, Sanders, and Sauter, as well as a request for an update from the Packs after the visit. (*Id.*). On January 19, 2012, Sharon Eberhardt, Sanders' immediate supervisor, took Child X to the Packs' home for the overnight visit. (*Id.* at ¶24). As requested, Angela Pack sent the report of Child X's overnight visit. (*Id.* at ¶25).

On January 24, 2013, DHS notified Defendant that the plans for the weekend visit of Child X to the Pack home were cancelled. (*Id.* at ¶26). During a conference call the next day with Defendant, DHS requested that Child X remain in the Andrews' home where the child had resided the previous six months. (*Id.* at ¶27).

Shortly thereafter, Angela Pack complained to Pennsylvania Department of Public Welfare ("DPW"), Office of Children, Youth and Families, about the services provided by Defendant and DHS regarding the adoption of Child X. (*Id.* at ¶28). On February 20, 2013, Barbara Spamm, a DPW investigator, conducted an investigation into Pack's complaints. (*Id.* at ¶29).

Unbeknownst to Plaintiffs at the time, a few days prior to the scheduled February 1, 2013, placement of Child X in the Packs' home, Andrews objected to the placement and expressed a new interest in adopting Child X.[2] (*Id.* at ¶31).

Plaintiffs contend that DHS withdrew its support for the adoption of Child X by the Packs and favored the placement of Child X with Andrews, solely because of race. (*Id.* at ¶¶31-32). Plaintiffs further allege "on information and belief," that DPW and DHS pressured Defendant to stop the placement process of Child X with the Packs. (*Id.* at ¶33). Plaintiffs also contend that they were fired by Defendant because they supported the adoption of Child X, an African-American child, by the Packs, a Caucasian family. (*Id.*).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662,

---

[2] Andrews had previously told Sanders that she was not interested in adopting Child X. (*Id.* at ¶31).

679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

In its motion, Defendant contends that the amended complaint should be dismissed because Plaintiffs: (1) have failed to assert, in their §1981 claims at Count I, that the discrimination suffered was pursuant to an official policy or custom, as required under *Monell v. New York City Dep't of Soc. Services,* 436 U.S. 658 (1978); (2) have failed to plead facts sufficient to show that they have a plausible claim for relief for racial discrimination; (3) have failed at Count II to state a §1983 claim under the Fourteenth Amendment and/or to satisfy the *Monell* requirements; and (4) have failed to allege the necessary elements for a substantive due process and/or equal protection claim under the Fourteenth Amendment.

4

Because this Court agrees that Plaintiffs have failed to plead sufficient facts to establish a

*prima facie* claim for racial discrimination under either §1981 or §1983, it will limit its analysis

and discussion to those arguments as they are dispositive of the motion to dismiss, and will not

address Defendant's alternative *Monell* arguments.[3]

*Plaintiffs' §1981 Claims*

As stated, at Count I, Plaintiffs assert §1981 claims premised on the alleged wrongful

termination of their employment, which they contend was based upon: (1) their support for the

placement and adoption of an African-American foster child with Caucasian parents; and (2)

their own race. Defendant moves to dismiss these §1981 claims on the basis that Plaintiffs have

failed to allege sufficient facts to plausibly show that they were terminated because of their race,

as required by this section.

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have
> the same right in every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence, and to the full and
> equal benefit of all laws and proceedings for the security of
> persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and
> exactions of every kind, and to no other.

42 U.S.C. §1981. As such, §1981 prohibits "racial" discrimination when making and enforcing

private and public contracts. *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987);

*Brown v. Phillip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001).

---

[3] In its motion to dismiss, Defendant also contends that Plaintiffs assert claims that are factually and legally inconsistent. Specifically, Defendant argues that at Count I, Plaintiffs assert §1981 claims for racial discrimination, which are claims that cannot be asserted against a state actor. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009). At Count II, Plaintiffs assert §1983 claims for the violation of their substantive due process and equal protection rights under the Constitution, which are claims that can only be asserted against a state actor. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). While this Court agrees that Plaintiffs' claims, as alleged, are inconsistent, nevertheless, these contentions will be addressed individually and without regard to this inconsistency.

To state a claim under §1981, Plaintiffs must allege facts sufficient to support: (1) that they are members of a racial minority; (2) an intent by Defendant to discriminate on the basis of race; and (3) the existence or inference of discrimination concerning one or more of the activities enumerated in the statute, such as the right to make and/or enforce contracts. *Brown*, 250 F.3d at 797. To sufficiently state a violation of §1981, "[a] specific factual basis must be pled to create the inference of discrimination." *Frederick v. Southeastern Pennsylvania Transp. Authority*, 892 F. Supp. 122, 125 (E.D. Pa. 1995).

After a careful review of the amended complaint, this Court finds that Plaintiffs have failed to allege a plausible §1981 claim of intentional discrimination against Defendant based on race. While Plaintiffs' amended complaint contains an abundance of facts, those facts do not support Plaintiffs' contentions that they were terminated *because of their race.* At best, the facts alleged establish that Plaintiffs, who are both African-American, were terminated because of their support for the adoption of an African-American child by white parents. Such a reason for termination, however, does not run afoul of §1981 and, thus, does not give rise to a claim under §1981.

As stated, to assert a viable claim under §1981, Plaintiffs must allege facts showing that they were terminated because of *their* race, not because of their views of race or because of someone else's race. Plaintiffs have failed to make such a showing. Therefore, to the extent Plaintiffs' §1981 claims are premised upon their support for the placement of an African-American foster child with Caucasian adoptive parents, such reason for termination is not violative of §1981 and, therefore, Plaintiffs' claims fail.

Though Plaintiffs allege in one conclusory paragraph that they were terminated because of their race, (Amend. Comp. at ¶41), they fail to allege any facts to support this assertion or any

6

supportable inferences that could lead to this conclusion. Apart from this one conclusory allegation, a legal conclusion that this Court must disregard under *Twombly*, the amended complaint is devoid of any facts from which one could infer that Defendant terminated Plaintiffs because of *their* race. To the contrary, the two paragraphs of the amended complaint that Plaintiffs cite to as support for their §1981 claims, (Paragraphs 33 and 37), do not relate to Plaintiffs' race, but rather assert facts that they were fired because they "supported the adoption of Child X, a Black child, by the Packs, a White family . . . ."[4] The facts as alleged do not support Plaintiffs' otherwise bald contention that they were fired because of *their* race, as required for a §1981 claim. Instead, the amended complaint contains only factual averments that they were terminated because of their support for a particular white adoptive family and not because of their own race. Therefore, Plaintiffs' §1981 claims are dismissed.

### Plaintiffs' §1983 Claims

At Count II, Plaintiffs assert claims based upon the alleged deprivation of their rights under the due process and equal protection clauses of the Fourteenth Amendment.[5] To maintain a cause of action under §1983, Plaintiffs "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under *color of state law*." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). "The color of state law element is the threshold issue; there is no liability

---

[4] Notably, in their response to Defendant's motion, Plaintiffs again connect their termination to their support for "the adoption of a Black foster child by a qualified White Family," but fail to point to any alleged facts that support their contention that they were terminated because of their own race. (*See* Plaintiffs' Response at p. 7).

[5] Though Plaintiffs fail to reference §1983 in Count II of their amended complaint, civil claims for constitutional violations can only be brought pursuant to §1983.

7

under §1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

Private parties, such as Defendant, may be held liable for §1983 violations only when they have acted under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). A private party acts under color of state law when the party exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49; *see also Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir. 1997). An action taken by a private entity with the mere approval or acquiescence of the state is not a state action. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Because §1983 was enacted to deter state actors from violating individuals' federal rights, it cannot reach "merely private conduct, no matter how discriminatory or wrongful." *Id.* at 50.

A careful reading of Plaintiffs' amended complaint reveals that Plaintiffs have not set forth sufficient facts to plausibly show that Defendant, a non-sectarian, non-profit child welfare and community services organization, acted under color of state law when it terminated their employment. To support Defendant's status as a state actor, Plaintiffs allege only that Defendant was the recipient of funds "from the City of Philadelphia and Commonwealth of Pennsylvania in connection with the provision of foster care and adoption services." (Amend. Comp. ¶45). However, "a private entity does not become a state actor for the purpose of §1983 simply because it is subject to state regulations or receives funding from the state." *Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 719 (3d Cir. 2012) (citations omitted); *see also Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982) (holding that a nursing home was not a state actor, even though the state subsidized its operating and capital costs and paid the medical expenses of its

patients).  Thus, this Court finds that Defendant's mere receipt of state funding is insufficient to establish Defendant's status as a state actor.

Plaintiffs have also failed to provide any legal authority for Plaintiffs' conclusion that a private adoption entity, such as Defendant, could be a *per se* state actor for all conduct. Notwithstanding, this Court recognizes that some courts in this jurisdiction have found other defendant foster care agencies acted under color of law.  *See e.g.*, *Harris v. Lehigh County Office of Children & Youth Services*, 418 F.Supp.2d 643, 651 (E.D. Pa. 2005); *Donlan v. Ridge*, 58 F.Supp.2d 604, 610-11 (E.D. Pa. 1999); *Estate of Adam Earp v. Doud*, 1997 WL 255506, at *2 (E.D. Pa. May 7, 1997).[6]  Those cases, however, are distinguishable in that the §1983 claims were asserted by either the foster children or their parents for injuries caused by the private foster care agencies' conduct in providing foster care services.

Here, Plaintiffs have failed to allege sufficient facts to establish that Defendant could be considered a state actor for §1983 purposes.[7]  Significantly, Plaintiffs challenge only Defendant's conduct in terminating their employment, and not any conduct relating to Defendant's foster care services.  Defendant's termination of Plaintiffs, however, unlike the placement and care of foster children, was not a traditionally exclusive government function.  Thus, the conduct being challenged here, as pled, was not undertaken "under color of law."  As in *Gross*, aside from Plaintiffs' allegation that Defendant was the recipient of funds from the City of Philadelphia, the

---

[6] Courts in other circuits have found differently.  *See e.g., Johnson v. Rodrigues*, 293 F.3d 1196, 1203-1204 (10th Cir. 2002) (finding that private adoption agency was not a state actor); *Gidney v. Little Flower Adoptions*, 2006 WL 2482948, at *3 (N.D. Tex. Aug. 29, 2006) (same).

[7] As noted above, in their response to the motion, Plaintiffs stake out the untenable and unsupportable position that for purposes of their claims under §1981, Defendant was not a state actor, but for purposes of their §1983 claims, Defendant was a state actor.  Where a plaintiff's claims are based upon the same underlying facts, as is the case here, this Court fails to see how a defendant could act both as a non-state actor and a state actor.

9

amended complaint lacks any factual allegations to support even an inference that Defendant is a state actor. *See Gross*, 487 F. App'x at 720.

Further, §1983 does not provide substantive rights. Instead, this provision "provides a remedy for the deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775-76 (3d Cir. 2004). Thus, Plaintiffs must allege facts sufficient to establish that Defendant, acting under color of state law, deprived Plaintiffs of a right secured by the Constitution or by the laws of the United States, but have failed to do so. *See Robb v. City of Philadelphia*, 733 F.2d 286, 290-91 (3d Cir. 1984). As set forth above, Plaintiffs contend that Defendant's termination of their employment constitutes a deprivation of their due process and equal protection rights. For the reasons stated below, this Court finds that Defendant's termination of Plaintiffs' employment does not rise to the level of a constitutional violation.

### 1. Plaintiffs' Substantive Due Process Claims

As stated, Plaintiffs base their §1983 claims on Defendant's violation of their substantive due process rights. (*See* Amend. Comp. ¶47). The due process clause of the Fourteenth Amendment provides, in part, that "[n]o State . . . shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. Thus, in determining whether there has been a due process violation, a court must first consider whether there has been a deprivation of life, liberty, or property. *Thomas v. Town of Hammonton*, 351 F.3d 108, 113 (3d Cir. 2003). To state a substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000) (citations omitted). Even then "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process. Rather, to state a

10

substantive due process claim, a plaintiff must have been deprived of a particular quality of property interest." *Id.*

In their amended complaint, Plaintiffs do not specify the particular interest of which they claim to have been deprived, though they base their due process claim, like all of their claims, on the termination of employment. Thus, the only potential interest that Plaintiffs have identified is continued employment. To have a constitutionally-protected property interest in employment "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Under Pennsylvania law, an employee is deemed to be an at-will employee unless a statute or a contractual provision provides otherwise. *See Garcia v. Newtown Twp.*, 819 F.Supp.2d 416, 425 (E.D. Pa. 2011); *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000) (discussing Pennsylvania's presumption of at-will employment); *Nix v. Temple University*, 596 A.2d 1132, 1135 (Pa. Super. 1991) ("[I]n Pennsylvania an at-will employment environment is the norm, absent a contract to the contrary, and thus, an employee can be terminated for good reason, bad reason, or no reason at all."). Further, at-will employees do not have a constitutionally-protected property interest within the meaning of the Fourteenth Amendment. *See Bishop v. Wood*, 426 U.S. 341, 346 n.8 (1976); *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) ("The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because he serves solely at the pleasure of his employer."); *Thomas v. Town of Hammonton*, 351 F.3d 108, 113 (3d Cir. 2003) (holding that an at-will employee lacked a constitutionally protected property interest); *Robertson v.*

11

*Fiore*, 62 F.3d 596, 601 (3d Cir. 1995) (holding that an at-will employee "lacks a protected property interest in his position within the meaning of the Fourteenth Amendment.").

Here, Plaintiffs have not alleged that they were not at-will employees. Thus, they are deemed to be at-will employees. Under these circumstances, Plaintiffs' due process claims are without merit because Plaintiffs have not alleged sufficient facts to support a constitutionally-protected interest. *Cf. Garcia*, 819 F.Supp.2d at 426-27 (dismissing §1983 claim for wrongful employment termination because the plaintiff was an at-will employee).

### 2. *Plaintiffs' Equal Protection Claims*

Plaintiffs also base their §1983 claims upon Defendant's purported violation of their constitutional right to equal protection. The equal protection clause of the Fourteenth Amendment provides, in part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. To succeed on a §1983 equal protection claim, Plaintiffs must allege facts demonstrating "purposeful discrimination" and that they "receiv[ed] different treatment from that received by other individuals similarly situated." *Andrews*, 895 F.2d at 1478; *see also Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). To meet the *prima facie* elements of discrimination, Plaintiffs must allege that: (1) they were members of a protected class; (2) similarly-situated to members of an unprotected class; and (3) were treated differently from members of the unprotected class. *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2005); *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992). In alleging the existence of individuals outside the protected class, Plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief;" instead, Plaintiffs

12

must identify individuals outside of their protected class who received differential treatment. *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005).

While Plaintiffs state they are African-Americans, they have not alleged that Defendant treated other similarly-situated individuals outside of their protected class differently. In fact, Plaintiffs never identify any persons outside of their protected class who were similarly-situated. Plaintiffs' amended complaint is also devoid of any allegation that Defendant treated them less favorably than it treated any other similarly-situated employees. Based on the alleged facts, or more accurately, the absence of necessary facts, this Court cannot find that Plaintiffs received disparate treatment on the basis of their race or any other protected characteristic in violation of the equal protection clause.

In addition, Plaintiffs fail to allege facts to show that they were the victims of purposeful discrimination or that they were treated differently because of their own race. As set forth, Plaintiffs have alleged facts to establish, at best, that they were terminated because of their support for the adoption of an African-American foster child by Caucasian adoptive parents. For the reasons stated, these facts cannot establish purposeful discrimination on account of Plaintiffs' race and, therefore, their §1983 claims fail.

### *Leave to Amend*

Although the Third Circuit has directed district courts to ordinarily provide a civil rights plaintiff an opportunity to file an amended complaint where the original complaint is subject to dismissal under Rule 12(b)(6), *see Phillips*, 515 F.3d at 245 (reiterating the rule that leave to amend must be granted *sua sponte* in civil rights actions, "unless such an amendment would be inequitable or futile."), it is this Court's view that any such attempt to amend the complaint, a second time, would be legally futile. This Court has dismissed Plaintiffs' civil rights claims

13

against Defendant, not because Plaintiffs have failed to provide a well-pleaded amended complaint, but rather, because the detailed facts set forth in their amended complaint fail, as a matter of law, to establish a constitutional violation under §1983 or racial discrimination under §1981. It is, therefore, this Court's opinion that any attempt to amend the complaint a second time would be futile.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted and Plaintiffs' claims are dismissed, with prejudice. An order consistent with this memorandum opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.